## Missouri *v.* Lewis.

1. The provision in the first section of the Fourteenth Amendment to the Constitution of the United States, which prohibits a State from denying to any person the equal protection of the laws, contemplates the protection of persons, and classes of persons, against unjust discriminations by a State; it does not relate to territorial or municipal arrangements made for different portions of a State.

2. A State is not thereby prohibited from prescribing the jurisdiction of its several courts, either as to their territorial limits, or the subject-matter, amount, or finality of their respective judgments or decrees.

3. Each State has full power to make for municipal purposes political subdivisions of its territory, and regulate their local government, including the constitution of courts, and the extent of their jurisdiction.

4. A State may establish one system of law in one portion of its territory, and another system in another, provided always that it neither encroaches upon the proper jurisdiction of the United States, nor abridges the privileges and immunities of citizens of the United States, nor deprives any person of his rights without due process of law, nor denies to any person within its jurisdiction the equal protection of the laws in the same district.

5. By the Constitution and laws of Missouri, the Saint Louis Court of Appeals has exclusive jurisdiction in certain cases of all appeals from the circuit courts in Saint Louis and some adjoining counties; the Supreme Court has jurisdiction of appeals in like cases from the circuit courts of the remaining counties of the State. *Held,* that this adjustment of appellate jurisdiction is not forbidden by any thing contained in the said amendment.

ERROR to the Supreme Court of the State of Missouri.

This writ of error was brought by the State of Missouri, on the relation of Frank J. Bowman, to reverse the judgment of the Supreme Court of Missouri refusing to issue a *mandamus* to Edward A. Lewis, Charles S. Hayden, and Robert A. Bakewell, judges of the Saint Louis Court of Appeals. The object of the *mandamus* was to compel the latter court to grant his application for an appeal to the said Supreme Court from a judgment of said Court of Appeals, affirming a judgment of the Circuit Court of Saint Louis County, removing Bowman, a resident of that county, from the practice of law in the State, he having by the verdict of a jury been found guilty upon charges preferred against him by the committee of prosecution of the Bar Association.

Wagner's Missouri Statutes, c. 12, p. 198, title " Attorneys-at-Law," contain the following provisions : —

" SECT. 6. Any attorney or counsellor at law who shall be guilty of any felony or infamous crime, or improperly retaining his client's money, or of any malpractice, deceit, or misdemeanor in his professional capacity, may be removed or suspended from practice, upon charges exhibited and proceedings thereon had, as hereinafter provided.

" SECT. 7. Such charges may be exhibited, and proceedings thereon had in the Supreme Court, or in the Circuit Court of the county in which the offence shall have been committed or the accused resides.

" SECT. 8. The court in which such charges shall be exhibited shall fix a day for the hearing, allowing a reasonable time, and the clerk shall issue a citation accordingly, with a copy of the charges annexed, which may be served in any county in this State.

" SECT. 9. The copy of the charges and citation shall be served in the same manner as a declaration and summons in civil actions, a reasonable time before the return-day thereof.

" SECT. 10. If the party served with citation shall fail to appear, according to the command thereof, obedience may be enforced by attachment, or the court may proceed *ex parte.*

" SECT. 11. If the charges allege a conviction for an indictable offence, the court shall, on the production of the record of conviction, remove the person so convicted, or suspend him from practice for a limited time, according to the nature of the offence, without further trial.

" SECT. 12. Upon charges other than in the last section speci-
fied, the court shall have power only to suspend the accused from
practice, until the facts shall be ascertained in the manner herein-
after prescribed.

" SECT. 13. If the charge be for an indictable offence, and no
indictment be found, or being found, shall not be prosecuted to trial
within six months, the suspension shall be discontinued, unless the
delay be produced by the absence or procurement of the accused, in
which case the suspension may be continued until a final decision.

" SECT. 14. The record of conviction or acquittal of any indict-
able offence shall, in all cases, be conclusive of the facts, and the
court shall proceed thereon accordingly.

" SECT. 15. When the matter charged is not indictable, a trial of
the facts alleged shall be had in the court in which the charges are
pending, which trial shall be by a jury; or if the accused, being
served with process, fail to appear, or appearing, does not require a
jury, by the court.

" SECT. 16. In all cases of conviction, the court shall pronounce
judgment of removal or suspension according to the nature of the
facts found.

" SECT. 17. In all cases of a trial of charges in the Circuit Court
the defendant may except to any decision of the court, and may
prosecute an appeal or writ of error in all respects as in actions at
law.

" SECT. 18. Every judgment or order of removal or suspension,
made in pursuance of this chapter by the Supreme Court, or by
any circuit court, shall operate, while it continues in force, as a re-
moval or suspension from practice in all the courts of this State."

The Constitution of Missouri adopted Oct. 30, 1875, contains
the following provisions, art. 6, title " Judicial Department :"—

" SECT. 1. The judicial power of the State, as to matters of law
and equity, except as in this Constitution otherwise provided, shall
be vested in a supreme court, the Saint Louis court of appeals,
circuit courts, criminal courts, probate courts, county courts, and
municipal corporation courts.

" SECT. 2. The Supreme Court, except in cases otherwise di-
rected by this Constitution, shall have appellate jurisdiction only,
which shall be coextensive with the State, under the restrictions
and limitations in this Constitution provided.

" SECT. 3. The Supreme Court shall have a general superintend-
ing control over all inferior courts. It shall have power to issue

writs of *habeas corpus, mandamus, quo warranto, certiorari,* and other remedial writs, and to hear and determine the same."

" SECT. 12. There is hereby established in the city of Saint Louis an appellate court, to be known as the Saint Louis Court of Appeals, the jurisdiction of which shall be coextensive with the city of Saint Louis, and the counties of Saint Louis, Saint Charles, Lincoln, and Warren. Said court shall have power to issue writs of *habeas corpus, quo warranto, mandamus, certiorari,* and other original remedial writs, and to hear and determine the same, and shall have a superintending control over all inferior courts of record in said counties. Appeals shall lie from the decisions of the Saint Louis Court of Appeals to the Supreme Court, and writs of error may issue from the Supreme Court to said court, in the following cases only : In all cases where the amount in dispute, exclusive of costs, exceeds the sum of $2,500 ; in cases involving the construction of the Constitution of the United States or of this State ; in cases where the validity of a treaty or statute of, or authority exercised under, the United States is drawn in question ; in cases involving the construction of the revenue laws of this State, or the title of any office under this State ; in cases involving title to real estate ; in cases where a county or other political subdivision of this State or any State officer is a party, and in all cases of felony."

" SECT. 19. All cases which may be pending in the Supreme Court at Saint Louis at the time of the adoption of this Constitution, which, by its terms, would come within the final appellate jurisdiction of the Saint Louis Court of Appeals, shall be certified and transferred to the Saint Louis Court of Appeals, to be heard and determined by said court."

" SECT. 21. Upon the adoption of this Constitution, and after the close of the next regular terms of the Supreme Court at Saint Louis, and Saint Joseph, as now established by law, the office of the clerk of the Supreme Court at Saint Louis and Saint Joseph shall be vacated, and said clerks shall transmit to the clerk of the Supreme Court at Jefferson City all the books, records, documents, transcripts, and papers belonging to their respective offices, except those required by sect. 19 of this article to be turned over to the Saint Louis Court of Appeals ; and said records, documents, transcripts, and papers shall become part of the records, documents, transcripts, and papers of said Supreme Court at Jefferson City, and said court shall hear and determine all the cases thus transferred, as other cases."

" SECT. 27. . . . . The Saint Louis Court of Appeals shall have

exclusive jurisdiction of all appeals from, and writs of error to, the Circuit Courts of Saint Charles, Lincoln, and Warren Counties, and the Circuit Court of Saint Louis County in special term, and all courts of record having criminal jurisdiction in said counties."

The statutes of Missouri provide that "every person aggrieved by any final judgment or decision of any circuit court, in any civil case, including cases of contested elections, may make his appeal to the Supreme Court." Act of Feb. 28, 1871; Wagn. Mo. Stat., sect. 9, p. 159.

"In all cases of final judgment, rendered upon any indictment, an appeal to the Supreme Court [District Court] shall be allowed the defendant, if applied for during the term at which such judgment is rendered." Gen. Stat. Mo., c. 215, sect. 1.

The act of Feb. 16, 1877, provides that, —

"Sect. 1. Every person aggrieved by any final judgment or decision of any circuit court, or the Saint Louis Court of Appeals, may make his appeal to the Supreme Court in any civil case." Acts of Legislature of Missouri, session 1877.

*Mr. Jeremiah S. Black, Mr. George F. Edmunds,* and *Mr. David Wagner* for the plaintiff in error.

1. Bowman, the relator, having asserted his right to appeal from the Saint Louis Court of Appeals, on the ground that the provisions limiting appeals from that court were in violation of the Fourteenth Amendment, and other articles of the Constitution of the United States, the jurisdiction of this court to review the judgment is clear (*Slaughter-House Cases*, 16 Wall. 36), and the case is properly here on a writ of error. *Memphis* v. *Brown*, 94 U. S. 715; *Ward* v. *Gregory*, 7 Pet. 633; *Columbian Insurance Co.* v. *Wheelright*, 7 Wheat. 534; *Dove* v. *Ind. School Dist.*, 41 Iowa, 689.

2. Missouri denies to some of its citizens the equal protection of the laws, by forbidding that access to the department administering them, which other citizens enjoy.

The right of an unrestricted appeal to the Supreme Court, granted to those residing in one hundred and nine counties of the State, is, in like cases, withheld from those residing in either of four other counties, or in the city of Saint Louis.

It cannot be answered that a hearing before the Saint Louis Court of Appeals is equivalent to that before the Supreme Court ; for the State Constitution recognizes the superiority of the wisdom and power of the latter tribunal, by investing it with superintending control over all subordinate courts, and in some instances by giving to parties the right of appeal from the Saint Louis Court of Appeals.

A State, under a republican form of government, is as imperatively bound to give equal remedial rights as it is to impose equal burdens and obligations. *Vanzant* v. *Waddell*, 2 Yerg. (Tenn.) 270 ; *Walley's Heirs* v. *Kennedy*, id. 552 ; *State Bank* v. *Cooper et al.*, id. 621 ; *Reynolds* v. *Baker*, 6 Cold. (Tenn.) 221, 228.

An attorney residing in one of the privileged counties of the State could have appealed a similar cause to the Supreme Court, while Bowman, although forced, as a resident of Saint Louis, to contribute by payment of taxes to the expenses of that court, finds its doors barred against him.

A State, if she precluded a citizen by name from seeking redress before the same tribunals provided for the administration of justice to her other citizens, would violate the Federal Constitution ; and a provision by which a resort to her Supreme Court is denied to those only who live in a particular district within her limits is equally objectionable and void.

We do not question the right of the State to establish, by constitutional provisions, intermediate appellate courts ; but we submit that to allow to a large portion of her citizens the right of appeal to her Supreme Court, and deny, under the same circumstances and conditions, that right to other citizens is in plain violation of the fundamental principle of equality, recognized and guaranteed by the Constitution of the United States. Art. 4, sect. 4, Const. U. S. ; *Budd* v. *State*, 3 Humph. (Tenn.) 490 ; 2 Yerg. (Tenn.) 270 ; *State Bank* v. *Cooper*, id. 599 ; *Jones* v. *Perry*, 10 id. 59.

3. If Bowman was of African descent, and the Constitution of Missouri prohibited a negro from appealing to the Supreme Court of the State for redress of his injuries, such a provision would be construed to be a denial of the " equal protection

of the laws," and in violation of the Fourteenth Amendment. *Slaughter-House Cases, supra.*

In this case, the discrimination complained of is exercised against him and other citizens, who are as justly entitled to protection from wrongful discrimination, and to the full protection of their constitutional right of equality before all the courts of the State as if they were of African descent. If not, that amendment which sought to establish equality before the law establishes inequality, by giving preference to the rights of the colored race, and affording them superior protection.

The weight of authority and sound reason seem to establish, that while the immediate object sought by the adoption of the amendment was the protection of the negro, its provisions extend and inure to the common benefit of all.

4. By the fourth section of the fourth article of the Constitution of the United States a republican form of government is guaranteed to every State in this union.

"The equality of the rights of citizens," says Mr. Chief Justice Waite, "is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. The duty was originally assumed by the States, and it still remains there. The only obligation resting upon the United States is to see that the States do not deny that right." *United States* v. *Cruikshank et al.*, 92 U. S. 542, 555; *Munn* v. *Illinois*, 94 id. 125; *Bank of Columbia* v. *Okeley*, 4 Wheat. 244.

It is submitted that the provisions touching the organization of the Saint Louis Court of Appeals, which limit the right of appeal therefrom, are in violation of the Constitution of the United States, because, —

*First*, They violate a fundamental principle of a republican form of government, — equality before the law, and impartial administration of the law.

*Second*, They deny the "equal protection of the laws" to citizens of the State and United States, and are therefore repugnant to, and inconsistent with, the provisions of the Federal Constitution.

*Mr. Henry Hitchcock* and *Mr. Chester H. Krum, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

By the Constitution and laws of Missouri an appeal lies to the Supreme Court of that State from any final judgment or decree of any circuit court, except those in the counties of Saint Charles, Lincoln, Warren, and Saint Louis, and the city of Saint Louis; for which counties and city the Constitution of 1875 establishes a separate court of appeal, called the Saint Louis Court of Appeals, and gives to said court exclusive jurisdiction of all appeals from, and writs of error to, the circuit courts of those counties and of said city; and from this court (the Saint Louis Court of Appeals) an appeal lies to the Supreme Court only in cases where the amount in dispute, exclusive of costs, exceeds the sum of $2,500, and in cases involving the construction of the Constitution of the United States or of Missouri, and in some other cases of special character which are enumerated. No appeal is given to the Supreme Court in a case like the present arising in the counties referred to, or in the city of Saint Louis; but a similar case arising in the circuit courts of any other county would be appealable directly to the Supreme Court.

The plaintiff in error contends that this feature of the judicial system of Missouri is in conflict with the Fourteenth Amendment of the Constitution of the United States, because it denies to suitors in the courts of Saint Louis and the counties named the equal protection of the laws, in that it denies to them the right of appeal to the Supreme Court of Missouri in cases where it gives that right to suitors in the courts of the other counties of the State.

If this position is correct, the Fourteenth Amendment has a much more far-reaching effect than has been supposed. It would render invalid all limitations of jurisdiction based on the amount or character of the demand. A party having a claim for only five dollars could with equal propriety complain that he is deprived of a right enjoyed by other citizens, because he cannot prosecute it in the superior courts; and another might equally complain that he cannot bring a suit for real estate in a justice's court, where the expense is small and the proceedings are expeditious. There is no difference in principle between such discriminations as these in the jurisdictions

of courts and that which the plaintiff in error complains of in the present case.

If, however, we take into view the general objects and purposes of the Fourteenth Amendment, we shall find no reasonable ground for giving it any such application. These are to extend United States citizenship to all natives and naturalized persons, and to prohibit the States from abridging their privileges or immunities, and from depriving any person of life, liberty, or property without due process of law, and from denying to any person within their jurisdiction the equal protection of the laws. It contemplates persons and classes of persons. It has not respect to local and municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made. The amendment could never have been intended to prevent a State from arranging and parcelling out the jurisdiction of its several courts at its discretion. No such restriction as this could have been in view, or could have been included, in the probibition that " no State shall deny to any person within its jurisdiction the equal protection of the laws." It is the right of every State to establish such courts as it sees fit, and to prescribe their several jurisdictions as to territorial extent, subject-matter, and amount, and the finality and effect of their decisions, provided it does not encroach upon the proper jurisdiction of the United States, and does not abridge the privileges and immunities of citizens of the United States, and does not deprive any person of his rights without due process of law, nor deny to any person the equal protection of the laws, including the equal right to resort to the appropriate courts for redress. The last restriction, as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances, to resort to them for redress. Each State has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects the administration of justice, it may establish one system of courts for cities and another for rural districts, one

system for one portion of its territory and another system for another portion.   Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right.   We think it is not denied or taken away by any thing in the Constitution of the United States, including the amendments thereto.                    .

We might go still further, and say, with undoubted truth, that there is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory.   If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so.   This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws.   If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to.   For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.

The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies.   Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right.   Each State prescribes its own modes of judicial proceeding.   If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State.   A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision.   Diver-

sities which are allowable in different States are allowable in different parts of the same State. Where part of a State is thickly settled, and another part has but. few inhabitants, it may be desirable to have different systems of judicature for the two portions, — trial by jury in one, for example, and not in the other. Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction of the powers of the State government if it could not, in its discretion, provide for these various exigencies.

If a Mexican State should be acquired by treaty and added to an adjoining State, or part of a State, in the United States, and the two should be erected into a new State, it cannot be doubted that such new State might allow the Mexican laws and judicature to continue unchanged in the one portion, and the common law and its corresponding judicature in the other portion. Such an arrangement would not be prohibited by any fair construction of the Fourteenth Amendment. It would not be based on any respect of persons or classes, but on municipal considerations alone, and a regard to the welfare of all classes within the particular territory or jurisdiction.

It is not impossible that a distinct territorial establishment and jurisdiction might be intended as, or might have the effect of, a discrimination against a particular race or class, where such race or class should happen to be the principal occupants of the disfavored district. Should such a case ever arise, it will be time enough then to consider it. No such case is pretended to exist in the present instance.

It is apparent from the view we have taken of the import and effect of the equality clause of the Fourteenth Amendment, which has been relied upon by the plaintiff in error in this case, that it cannot be invoked to invalidate that portion of the judicial system established by the Constitution and laws of Missouri, which is the subject of complaint. This follows without any special examination of the particular adjustment of jurisdictions between the courts of Missouri as affected by its Constitution and laws. Such a special examination, however, if it were our province to make it, would readily show that there is no foundation for the complaint which has been

made.   Bowman has had the benefit of the right of appeal to the full extent enjoyed by any member of the profession in other parts of the State.   In the outside counties they have but one appeal, — from the Circuit Court to the Supreme Court.   In Saint Louis, he had the benefit of an appeal from the Circuit Court of Saint Louis County to the Saint Louis Court of Appeals.   This is as much as he could ask, even if his rights of appeal were to be nicely measured by the right enjoyed in the outside counties.   The Constitution of the State has provided two courts of appeal for different portions of its territory, — the Saint Louis Court of Appeals for one portion, and the Supreme Court for another portion.   It is not for us, nor for any other tribunal, to say that these courts do not afford equal security for the due administration of the laws of Missouri within their respective jurisdictions.   Where the decisions of the Saint Louis Court of Appeals are final, they are clothed with all the majesty of the law which surrounds those of the Supreme Court.   If in certain cases a still further appeal is allowed from the one court to the other, this fact does not derogate in the least from the credit and authority of those decisions of the former which by the Constitution and laws of the State are final and conclusive.

But this special consideration is an accidental phase of the particular case.   The true ground on which the case rests is the undoubted power of the State to regulate the jurisdiction of its own tribunals for the different portions of its territory in such manner as it sees fit, subject only to the limitations before referred to ; and our conclusion is that this power is unaffected by the constitutional provision which has been relied on to invalidate its exercise in this case.

*Judgment affirmed.*