221 N.J. Super. 324 (1987)
534 A.2d 440
STATE OF NEW JERSEY
v.
RAUL A. ALVARADO, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Union County.
July 14, 1987.
Albert Zabady, Jr., Asst. Prosecutor, for State.
Anthony D. Rinaldo, Jr. (Rinaldo & Rinaldo) for defendant.
*325 WERTHEIMER, J.S.C.
The issue presented is whether the holding in State v. Gilmore, 103 N.J. 508 (1986), that prohibits the State from using peremptory challenges to strike jurors on the basis of group association, is equally applicable to defense challenges. The matter came before this court on a motion by the prosecution for a mistrial during and after the jury selection process in the case sub judice. Defendant stood before this Court on an Indictment which charged him, inter alia, with a second degree offense of Possession of a Weapon for Unlawful Purposes, a conviction which carries an automatic three-year sentence without parole. Defendant is hispanic; the two alleged victims are black. Both attorneys are white.
The import of this opinion is not whether the defense in fact impermissibly excluded, or attempted to exclude, a disproportionate number of jurors from a cognizable group, although this court held it did, but rather to supplement the court's oral opinion on the threshold issue as to whether State v. Gilmore applies to defense challenges also.
During the hearing it was noted that defense counsel had excluded two Blacks in his first three challenges when the propriety of those challenges was initially questioned by the State. The final tally was six Blacks excused in eleven challenges. The prosecution noted that the alleged victims in this matter were of the same race as the excluded jurors. A hearing was then held outside the jury's presence pursuant to the procedures outlined in State v. Gilmore, id. at 533-37.[1]
*326 It is clear from State v. Gilmore, 199 N.J. Super. 389 (App. Div. 1985) and State v. Gilmore, 103 N.J. 508 (1986) that the primary focus of those decisions was on the guarantee set forth in Article I of the New Jersey Constitution "that a defendant in a criminal case is entitled to a jury trial by a fair and impartial jury without discrimination on the basis of race, color, ancestry, or national origin." State v. Gilmore, 199 N.J. Super. at 398; State v. Gilmore, 103 N.J. at 524 (emphasis added). As noted by Judge Coleman in State v. Gilmore, 199 N.J. Super. at 400: "[w]hile the right to a fair and impartial jury is of constitutional dimensions, the right to peremptory challenges is not." Thus, the question is whether the "right to a fair and impartial jury" is a unilateral one for the sole enjoyment of the defendant or whether the community and the victims possess that right also.
The Supreme Court specifically declined to address the issue of whether its finding equally applied to defense counsel challenges. State v. Gilmore, 103 N.J. at 532 n. 6. However, that footnote recognized that a defendant could successfully attempt to exclude minority jurors if he wished:
"[m]ore probable and not at all futile is the latter, which the California Supreme Court addressed in Wheeler:

[W]hen a white defendant is charged with a crime against a black victim, the black community as a whole has a legitimate interest in participating in the trial proceedings; that interest will be defeated if the prosecutor does not have the power to thwart any defense attempt to strike all blacks from the jury on the ground of group bias alone. [People v. Wheeler, 22 Cal.3d 258, 148 Cal. Rptr. 890, 907, 583 P.2d 748, 765 n. 29 (1978)]
The argument for applying Wheeler's limitations to defense counsel is considerably stronger in the [situation where challenges are employed to eliminate or impermissibly reduce jurors who share the victim's cognizable group]." [103 N.J. at 532 n. 6.]
What is a fair trial? Black's Law Dictionary, (5th ed. 1979) defines a fair trial as: "A hearing by an impartial and disinterested tribunal; ... [a] trial which insures substantial justice *327 ... [a] trial before an impartial judge, an impartial jury, and in an atmosphere of judicial calm ... [a]n adequate hearing and an impartial tribunal, free from any interest, bias, or prejudice." The concept is usually discussed in terms of the accused's right, or the defendant's right, to a fair and impartial trial. The issue is, however, whether society or the victims also have a right to a fair and impartial trial.
The aforementioned footnote in State v. Gilmore, 103 N.J. at 532, n. 6, notes that it has been recognized that the victim and his cognizable group have "a legitimate interest in participating in the trial proceedings." This is neither a shocking nor a new concept. Forty years ago the United States Supreme Court noted that the injury generated by discriminatory jury selection "is not limited to the defendant  there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." Ballard v. United States, 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946). Recently the Supreme Court reiterated this principle in Batson v. Kentucky, 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69, 81 (1986) when it decreed: "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." Justice Marshall noted in his concurring opinion in Batson that "[b]etween [the defendant] and the state the scales are to be evenly held." Batson, 476 U.S. at 107, 106 S.Ct. at 1729, 90 L.Ed.2d at 95, citing Hayes v. Missouri, 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578 (1887). Interestingly, Chief Justice Burger noted in his dissent, joined by Justice Rehnquist, that: "Once the court has held that prosecutors are limited in their use of peremptory challenges, could we rationally hold that defendants are not?" Batson, 476 U.S. at 126, 106 S.Ct. at 1738, 90 L.Ed.2d at 107.
*328 The answer is obvious. Defendant is guaranteed a fair and impartial trial. To that end our system dictates that he is assumed to be innocent until proven guilty beyond a reasonable doubt; that he need not testify; that he need not enter any proofs at all to prevail. He is given a host of constitutional safeguards that are unique to our system of justice. Our system perceives that with all these rights and privileges flowing to defendant the scales of justice are in equipoise at the beginning of each criminal trial. Thereafter, the prosecution is not allowed to invade defendant's rights during the trial through what has been held to be the impermissible use of peremptory challenges. The right of the community, the victims and the entire State should be no less.
The peremptory challenges, exercised in an absolutely unfettered manner by either the State or defense, could be abused to strike all members of certain cognizable groups from the jury venire thereby destroying the representative cross-section rule reinforced by State v. Gilmore, supra.
The Government representing the public interest, as well as the defendant, is entitled to fair and impartial administration of justice and every reasonable precaution must be taken in the interest of both to assure that the rights of neither are unduly or unfairly subordinated. But the protection of individual rights cannot be extended to the point where the protection of the public interest becomes sterile. [United States v. Provenzano, 240 F. Supp. 393, 411 (D.N.J. 1965).]
As our Supreme Court decreed in State v. Deutsch, "[i]t is vital that justice be administered not only with a balance that is clear and true but also with such eminently fair procedures that the litigants and the public will always have confidence that it is being so administered (emphasis added)." 34 N.J. 190, 206 (1961). If the courts allow jurors to be excluded because of group bias, be it at the hands of the State or the defense, they would be willing participants in a scheme that could only undermine the very foundation of our system of justice  our citizens' confidence in it. The tactics discussed here, therefore, cannot be condoned.
NOTES
[1] (A) The court determined a timely objection had been made. State v. Gilmore, 103 N.J. at 535; (B) The State was given the opportunity to rebut the presumption that the challenges were exercised permissibly by establishing a prima facie showing they were exercised on constitutionally-impermissible grounds. Ibid. (C) The State was given the opportunity to show there was a substantial likelihood that the challenges were based on assumptions of group bias. Id. 103 N.J. at 536. (D) This court found that the State established a prima facie case. Id. at 537. (E) The burden was then shifted to the defense to establish that the challenges under review were justifiable as a result of concerns about situation-specific bias. Ibid. This court was not unmindful of the axiom that no burden of proof is imposed upon a defendant in a criminal case but notes that no such objection was made to the procedure followed. Additionally, defense counsel still must adhere to procedural requirements.